UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RICHARD SMITH AND JANELLE SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF FULTON, INDIANA; TOWN | ) | No. 3:08-CV-536 |
| COUNCIL OF TOWN OF FULTON; TOWN | ) | |
| OF FULTON WASTEWATER UTILITY; and | ) | |
| FULTON COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DEFENDANTS IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, TOWN OF FULTON, INDIANA (hereinafter "Town");

TOWN COUNCIL OF TOWN OF FULTON (hereinafter "Council"); TOWN OF FULTON

WASTEWATER UTILITY (hereinafter "Utility"); and FULTON COUNTY HEALTH

DEPARTMENT (hereinafter "County"), by and though their attorneys at KNIGHT, HOPPE,

KURNIK & KNIGHT, LTD., respectfully request that this Court grant their motion for summary

judgment for the following stated reasons.

## INTRODUCTION

This Court should grant Defendants' Motion for Summary Judgment on all claims in

Plaintiffs' Complaint because there are no genuine issues of material fact which would preclude

judgment in their favor. Plaintiffs fail to meet their burden and establish any evidence of a

constitutional violation or a violation of Plaintiffs' state law rights. First, Plaintiffs fail to

establish a *prima facie* case of an Equal Protection Clause deprivation and is barred by the statute

of limitations. Second, there is no evidence that Defendants' actions constituted an unlawful

taking and is barred by Plaintiffs' failure to exhaust administrative remedies. Third, Plaintiffs' state law claims should fail because Plaintiffs: 1) are not entitled to declaratory judgment; 2) are not entitled to a mandate order; 3) are not entitled to injunctive relief; 4) failed to comply with the Indiana Tort Claims Act; 5) are barred by the applicable statute of limitations; 6) are barred by immunity; and 7) failed to exhaust available administrative remedies.

There is no evidence that Defendants violated any of Plaintiffs' rights. Rather, it is undisputed that in 1998 the Town enacted an ordinance which resulted in installing a sewer system for residents of the Town requiring payment for installation. Plaintiffs, whose property was located just outside of Town limits, did not connect their property at that time. In 2007, Plaintiffs allowed their rental home property septic system to become so toxic, the County gave notice to the renters of the home to vacate. Rather than fix the septic system or pay to connect to the Town's sewer system, Plaintiffs filed suit here. Thus, this Court should grant summary judgment as a matter of law as to all counts.

## STATEMENT OF MATERIAL FACTS

In September 1995, the Indiana Department of Environmental Management (IDEM) instructed the Town to put in a sewer system. (See Affidavit of Connie Hartman, ¶2, attached as Exhibit 1). Thereafter, the Town drafted a Sewer Use Ordinance and a Sewer Rate Ordinance and published the proposed ordinances in the newspaper. (Ex. 1, ¶¶3, 4). In 1998, the Town enacted two ordinances: Ordinance No. 1998-5, Sewer Use Ordinance (Exhibit 2) and the Ordinance No. 1998-3, Sewer Rate Ordinance (Exhibit 3) (Ex. 1, ¶5).

The Sewer Use Ordinance 1998-5 regulates the connection to and use of public and private sewers and drains, the installation and connection of building sewers, and the discharge of waters and wastes into the public sewer system and provides:

"The owner of all houses, building or properties used for human occupancy situated within the Town and abutting on any street, alley or right-of-way in which there is now located a public sanitary sewer of the Town is hereby required at this expense to install suitable toilet facilities therein, and to connect such facilities directly with the proper public sewer in accordance with the provisions of this ordinance, within one hundred eighty (180) days after date of official notice to do so, provided that said public sewer is within two hundred (200) feet of the property line." (Section 2(g)). (Ex. 2).

"All costs and expenses incident to the installation and connection of the building sewer shall be borne by the owner. The owner shall indemnify the Town from any loss or damage that may directly or indirectly be occasioned by the installation of the building sewer." (Section 4(b)). (Ex. 2).

The Sewer Rate Ordinance 1998-3 established a schedule of rates and charges to be collected by the Fulton Municipal Sewage Works from the owners of property and states:

The owner of any lot, parcel of real estate or building which was not included in the initial approved sewer project as defined in the final plans and specifications prepared by Philip L. Schnelker, Inc., the consulting engineers, connecting to the sewage works shall, prior to being permitted to make a connection, pay a connecting charge in the amount of: (a) One Thousand Forty Dollars ($1,040.00) for each equivalent since family dwelling, and (b) the cost of providing a connection to the public sewer, including excavation, backfilling, pavement replacement and installation of a  sewer line from the sewer to the property line. (Section 9). (Ex. 3).

Any such owner so connecting shall install all components of the sewer on private property as required by the Town to connect such private sewers into the public sewer system and shall pay the costs of such components and their installation." Section 9 specified that "connection charges will be imposed on any connection made after 180 days of availability for connection and on all connections made for future extensions of the system. (Section 9) (Ex. 3).

There were no legal challenges to either ordinance. (Ex. 1, ¶16).

In November 1998, the Town broke ground on the sewer system.  (Ex. 1, ¶17).  All property owners within Town limits connected to the sewer line, paid for their connection.  (See Ex. 2, Sections 2(g) and 4(b); Ex. 3, Section 9).

The Plaintiffs, Richard and Janelle Smith, owned the property at 7877 South State Road 25, Rochester, Indiana since 1977 or 1978 (hereinafter referred to as "the property").  (Richard

D. Smith dep. p. 11, Exhibit 4). The property has always been outside the Town of Fulton town limits. (Ex. 4, p. 11), (Janelle Smith dep. p. 8, Exhibit 5). The Smith family moved into the residence within a few months of purchasing it. (Ex. 4, p. 12). The septic system that was at the property when the Smiths purchased the property is the same system that is at the property today. (Ex. 4., p. 12). Since purchasing the property, only the toilet has been connected to the septic system. (Ex. 4, p. 16; Ex. 5, p. 9). The sinks, shower, and bathtub have never been connected to the septic system, rather that waste went to the backyard. (Ex. 4, p. 16).

Richard Smith (hereinafter "Smith") never did any work to the septic tank. (Ex. 4, pp. 12, 14). Janelle Smith (hereinafter "Janelle") was aware that they were having problems with the septic system because the toilet would not flush and the backyard was wet in the area of the septic system. (Ex. 5, p. 10). The Smiths resided at the property until 2000 and then began renting the property. (Ex. 5, p. 5).

Shortly before the County sent notice in May 2007, Smith noticed problems in the yard of the property after flushing the toilet by smelling the septic system leaching out on the top of the soil. (Ex. 4, pp. 14, 15, 28). After he noticed the problem, he talked to someone about working on the system. (Ex. 4,. p. 15). Smith showed the individual what was happening, but never obtained an estimate; rather, Smith received a letter from the County that it was closing down the property. (Ex. 4, pp. 15-16).

On May 1, 2007, Anna Armstrong, a tenant of the property, completed a Complaint Form concerning the septic system (attached as Exhibit 6). Later, she brought in photographs of the property which prompted an investigation. (Shannon Shepherd dep. p. 29, Exhibit 7). Shannon Shepherd, the Fulton County Environmentalist, and another employee of the County Health Department investigated the Complaint and conducted a dye test at the property. (Ex. 7, p. 31).

The investigation and dye test revealed that: water in the sink immediately outletted onto the side of the house (Ex. 7, p. 32); the bathtub and washing machine also outletted out of the same pipe onto the side of the house (Ex. 7, p. 53); and the dye which was put in the toilet was visible in the yard of the Property later that same day. (Ex. 7, pp. 31-32).

Shannon Shepherd's primary concern was that all water, whether it is sewage, regular water from household living or living conditions, has to go through a septic system because it is against code to have the water go out onto the surface of the ground. (Ex. 7, p. 33). When the toilet was flushed, the ground would bubble so they knew where the septic tank was. (Ex. 7, p. 36). There were additional complaints regarding Plaintiffs' property that were turned over to the Building Department which included water in the basement, wiring in the basement, the pump and the water heater in the basement were underwater, and there was a hole in the basement wall. (Ex. 7, pp. 55-56).

On May 10, 2007, Shannon Shepherd sent out the Health Order ("Order") which was signed by Dr. Bugno. (Ex. 7, pp. 25-26); (May 10, 2007 Health Order, attached as Exhibit 8). The Order, which was sent Certified Mail, was picked up on May 14, 2007. (Ex. 7, p. 26). The Order notified the Smiths about the health problems and ordinance violation problems that were found upon completing the complaint investigation on the property and to tell them that they could not continue to outlet sewage onto the surface of the ground. (Ex. 7, p. 27). The Order informed Plaintiffs that they had to connect to the public sewer system or vacate the premises and suspend using the existing septic system pursuant to County Ordinance 112006A (Attached as Exhibit 9; Ex. 7, p. 27).

Smith was not surprised when he received the Order from the County that his system was in failure, as he realized the system was in failure before he received the Order. (Ex. 4, p. 29).

The Order alerted Plaintiffs to the investigation performed by Shepherd and the problems discovered. (Ex. 9). The Order also notified Plaintiffs that an Order to Comply with being issued pursuant to I.C. § 16-20-1-19. (Ex. 9). Plaintiffs were given the option to connect to the sewer system or vacate the premise and suspend use of the existing septic tank. (Ex. 9). The Order informed the Plaintiffs that if they wished to dispute the decision of the County, they could request a hearing. (Ex. 4,. pp. 30-31; Ex. 7, p. 58; Ex. 8; Ex. 9; and Plaintiffs' Responses to Requests for Admissions, Exhibit 10).

Smith went to the County's Health Department Office with his daughter, Amanda Newcomer and spoke with Shannon Shepherd. (Ex. 4, pp. 32-33). Smith asked Shepherd if he could repair or replace his septic system, and she told him that he had to hook up to the Town's sewer system because his property was within 300 feet of the Town's sewer system. (Ex. 4, p. 31; Ex. 8).

Shepherd also told Smith that there was a problem with the gray water. (Ex. 4, p. 31). Smith was surprised to learn that there was a problem with the gray water because before it was acceptable to run your gray water outside of the house instead of into a septic system. (Ex. 4, p. 33). Janelle was also not aware that it was a violation to have the gray water drain directly out of the residence. (Ex. 5, p. 23).

Smith went to the Council meeting to inquire about hooking onto the Town's sewer system. (Ex. 4, p. 37). After the first meeting, the Council asked the Utility Supervisor, Donald Clouse, to obtain a plan from Schnelker Engineering as to how Plaintiffs would need to hook onto the Town's sewer system. (See Affidavit of Donald Clouse, attached as Exhibit 11 and Exhibit 1, Affidavit of Connie Hartman). The Town paid $2,300.00 for the plans which it obtained from Schnelker Engineering. (Ex. 11, Ex. 1). The Town sent the blueprint to Plaintiffs

as to what they needed to do to hook up. (Ex. 4, p. 37). Using the plans received from the Council, Smith obtained estimates on what it would cost to hook up and then he decided not to do so. (Ex. 4, p. 37). Smith has never obtained an estimate to have everything in the house ready to hook up to the sewer system. (Ex. 4, p. 38; Ex. 5, p. 24).

At the second meeting, he was told that he could hook up and the Council was waiving the $1,040.00 hook up fee. (Ex. 4, p. 40; Ex. 1). The Town obtained the right-of-way permit because they knew that he was going to have to go underneath the highway through the right-of-way on the state road. (Ex. 4, p. 71; Ex. 1).

Smith never disputed the Order by the County nor requested a hearing. (Ex. 4, p. 31; Ex. 7, p. 61). Since the property was ordered vacated by the County, he has not been able to rent the property out as a source of income. (Ex. 4, p. 48). However, if he hooked onto the sewer system, he would be able to rent the property. (Ex. 4, p. 48; Ex. 5, p. 27). Other than the County telling him he had to connect or vacate the premises, the County has not done anything else. (Ex. 4, p. 49; Ex. 5, p. 29). He has never inquired as to any other uses for the property and has never looked into selling the property. (Ex. 4, p. 45).

The Town has never taken any action against Plaintiffs. (Ex. 5, p. 28). The Council has not taken any action against Plaintiffs. (Ex. 4, p. 49; Ex. 5, p. 28). The Utility has not taken any action against Plaintiffs. (Ex. 4, p. 49; Ex. 5, p. 29).

The Plaintiffs' property line is 285 feet to the Town line but the residence is 653 feet from the Town line as it sits at the south end of the property. (Ex. 4, p. 52). Smith does not know of the Town and Utility paying for any order of the County and does not know of the Town ever paying for anything required by the County. (Ex. 4, pp. 50, 54; Ex. 5, p. 29). He does not know of anyone outside the Town who is hooked onto the sewer system. (Ex. 4, p. 54; Ex. 5, p. 30).

## SUMMARY JUDGMENT STANDARDS

Summary judgment should be granted when the pleadings and materials contained in discovery show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts and reasonable inferences should be drawn in favor of the non-movant. *Outlaw v. Newkirk*, 259 F.3d 388, 386 (7th Cir. 2001). The record, taken as a whole, "cannot leave a rational trier of fact to find for the non moving party, there is no genuine issue for trial." *Metsushita Electrical Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

## ARGUMENT

**I.     PLAINTIFFS FAIL TO MEET THEIR BURDEN AND ESTABLISH ANY EVIDENCE OF A DEPRIVATION OF THEIR EQUAL PROTECTION RIGHTS.**

There is no evidence that Defendants violated Plaintiffs' equal protection rights. Rather, Plaintiffs fail to point to any evidence that Defendants treated Plaintiffs any differently than anyone else or that Defendants did not have a rational reason for their decisions.

"The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060, 1074-1075 (2000); *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923) (*quoting Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).

"While the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, where … the plaintiff does not allege membership in such a class, he or she can still prevail in what is known as a 'class of one' equal protection claim." *Gryphon Development LLC, v. Town of Monroe*, 2009 WL 4288202 (S.D.N.Y. 2009); *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2nd Cir. 2005); *see also Dones v. City of New York*, No. 07 Civ. 3085, 2008 U.S. Dist. LEXIS 53681, at *27-29 (S.D. N.Y. July 9, 2008). A successful equal protection claim may be brought by a class of one where the plaintiff alleges that she has been (1) intentionally treated differently from others similarly situated and (2) there is no rational basis for the difference in treatment. *Olech*, 528 U.S. at 564; *Sioux City Bridge Co.,* 260 U.S. 441; *Allegheny Pittsburgh Coal Co. v. Commission of Webster County.*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). In order to prevail on such a claim, a plaintiff is "required to show, not only 'irrational and wholly arbitrary' acts … but also intentional disparate treatment." *Gryphon,* 2009 WL 4288202*; Giordano v. City of New York*, 274 F.3d 740, 751 (2nd Cir. 2001) (*quoting Olech*, 528 U.S. at 565) (emphasis in original).

There is no evidence that anyone who is similarly situated was treated differently. Smith testified that he does not know of the Town and Utility paying for any order of the County Ex. 4, p. 50); paying for anything required by the County (Ex. 4, p. 54); or anyone outside the Town who is hooked into the sewer system. (Ex. 4, p. 54). There is no evidence that the County failed to issue an Order to a property that had similar septic issues. Thus, Plaintiffs fail to point to anyone who is similarly situated, but treated differently.

Further, it is undisputed that the Defendants had a rational basis for its decisions. There is no evidence that the Town connected other citizens who lived outside of town limits for free.

There is no dispute that the septic system at the property violated the County's health codes. Thus, Plaintiffs' attempt to get a free septic system to clean up their mess should fail.

## II.     PLAINTIFFS' EQUAL PROTECTION CLAIM IS BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS.

Plaintiffs failed to comply with the applicable statute of limitations for their equal protection claim against the Town, Council and Utility. The statute of limitations for a 42 U.S.C. §1983 action is governed by the personal injury statute of the state where the alleged injury occurred. *Parks v. Madison County*, 783 N.E.2d 711 (Ind.Ct.App. 2002) (*citing Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 0938, 85 L.Ed.2d 254 (1985)).  In Indiana, that period of limitations is two years. *Parks v. Madison County*, 783 N.E.2d 711 (citing I.C. § 34-11-2-4).

The Plaintiffs were aware that the system was installed in 1998 and 1999 and claim they were refused to hook on at that time.  Plaintiffs did not file this action until November 2008, nine to ten years after the events applicable in this case, well after the two year state of limitations had expired.  Therefore, the federal claim alleging an equal protection violation against the Town, Council, and Utility are barred by the applicable limitation period.[1]

## III.     PLAINTIFFS FAIL TO MEET THEIR BURDEN OR PROVIDE ANY EVIDENCE OF A TAKINGS CLAIM AND IS OTHERWISE BARRED.

There is no evidence that Defendants' actions constitute an unlawful taking.  Rather, the County's action simply was its exercise of its obligations to protect citizens' health and welfare. Additionally, Plaintiffs did not exhaust the applicable administrative remedies which are a prerequisite for a takings claim.

---

[1] To the extent any federal claims are alleged against the County, those claims would also be barred by the two-year statute of limitations.

A taking includes any substantial interference with private property that destroys or impairs one's free use and enjoyment of the property or one's interest in the property. *Id., Bd. of Comm'rs of Vanderburgh County v. Joeckel*, 407 N.E.2d 274, 278 (Ind.Ct.App. 1980). "While property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id, Bd of Zoning Appeals, Bloomington, Ind. v. Leisz,* 702 N.E.2d 1026, 1028 (Ind. 1998) (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 414-415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922)). There are two types of regulatory takings. The first category encompasses regulations that require the property owner to suffer a physical "invasion" of his or her property. *Id., Leisz*, 702 N.E.2d at 1028-1029. The second category encompasses regulations that deny all economically beneficial or productive use of land. *Id.*

"The Supreme Court has held that the government may, consistent with the Takings Clause, affect property values by regulation without incurring an obligation to pay under the full scope of the State's police power." *Town Council of New Harmony*, 726 N.E.2d 1217, 1222; *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1022, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). "This may be done when the regulation proscribes "harmful or noxious" uses of property, although the proscribed use need not rise to this level." *Id.* Justice Scalia in writing for the court further explained "where the state reasonably concludes that 'the health, safety, morals, or general welfare would be promoted by prohibiting particular contemplated uses of land, compensation need not accompany prohibition.'" *Id., quoting Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 125, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

"A landowner is not entitled to the highest and best use of his land, and a taking only occurs when the land use regulation prevents all reasonable use of the land. *Id., Dep't of Natural Res. v. Ind. Coal Council, Inc.*, 542 N.E.2d 1000, 1004 (Ind. 1989), *cert. denied*, 493 U.S. 1078,

110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990). Moreover, a diminution of property value, standing along, will not establish a taking. *Ragucci v. Metro. Development Com'n of Marion County*, 702 N.E.2d 677, 683 (Ind.1998). The Supreme Court found no taking where a zoning ordinance created a 75-percent diminution in value (*Village of Euclid, Ohio v. Amler Realty Co.*, 272 U.S. 365, 384, 47, S.Ct. 114, 117, 71 L.Ed. 303 (1926)) and where a zoning ordinance significantly inhibited property owners' ability to develop the property (*Penn Central Trans. Co. v. City of New York*, 438 U.S. 104, 130, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978). Indiana courts have also failed to find a taking where the regulation significantly diminished the value of property. *See e.g. Leisz*, 702 N.E.2d at 1030 (failing to find a taking where "[plaintiffs'] property continues to have an economically viable use, even if it is somewhat diminished."); *Taylor-Chalmers, Inc. v. Bd. Of Comm'rs of LaPorte County*, 474 N.E.2d 531, 532 (Ind.Ct.App. 1985) (holding that a rezoning of plaintiff's property from "commercial or accommodation business" to "light industrial or agricultural" did not amount to a taking, although the plaintiff may have been denied the "highest and best use of his land"), *reh'g denied*.

Economically viable uses for Plaintiffs' property still exist. Plaintiffs admitted they have not looked into any other uses for the property. Additionally, Plaintiffs admitted that their property would not be affected if they paid to have the property connected to the sewer system. As Plaintiffs' property continues to have an economically viable use, even it if the use or value is somewhat diminished there has not been a significant economic impact of a regulation to hold that a taking has occurred.

In the case at bar, the County was well within its rights in ordering Plaintiff to connect to the sewer system or cease using the property because of the risk to the public's health. Pursuant to *Lucas*, as the health, safety and general welfare was promoted by the regulation of the

Property, compensation is not necessary. Additionally, the Town, Council and Utility have not interfered with Plaintiffs' property nor have they imposed any regulation on the property. Lastly, as Plaintiffs failed to exhaust the administrative remedies available to them, all of the Defendants are entitled to summary judgment on Plaintiffs' taking claim.

Further, Plaintiffs' takings claim is barred. While the Supreme Court has held that the exhaustion of state administrative remedies is not a prerequisite to bringing a federal claim under § 1983, there is an exception where a plaintiff alleges a violation of the Takings Clause of the Fifth Amendment. *Mirbeau of Geneva Lake LLC v. City of Lake Geneva*, 2009 WL 1770145 (E.D.Wis. 2009); *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186-87, 105 S.Ct. 3108, 87 L.Ed.2d 129 (1985). "In such cases, a plaintiff must provide the relevant statute regulatory agency an opportunity to make a definite decision, and must exhaust state remedies for just compensation before coming to federal court." *Williamson County*, 473 U.S. at 192-94. "The Seventh Circuit has made clear that the exhaustion requirements of *Williamson* cannot be avoided by labeling a takings claim as a procedural or substantive due process claim, or an equal protection claim." *See Forseth v. Village of Sussex,* 199 F.3d 363, 368-70 (7th Cir. 2000). As explained more fully in Section IV, G, Plaintiffs failed to exhaust the administrative remedies available to them. As such, Plaintiffs' taking claim must fail.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO ALL OF PLAINTIFFS' STATE LAW CLAIMS.

All of Plaintiffs' state law claims should fail. First, Plaintiffs seek a declaratory judgment; however this claim must fail as Plaintiffs cannot establish that they have a legitimate claim of entitlement to connection to the Town's sewer system and there is no case law or statute

to support this proposition.  Second, Plaintiffs fail to satisfy all six of the requirements for the issuance of a writ of mandamus.  Further, Plaintiffs do not have an unquestioned right to relief. Third, Plaintiffs have not filed a motion seeking injunctive relief nor have they identified case law or statute supporting that they are entitled to have the Defendants pay to have them hooked onto the sewer system.  Fourth, the applicable statute of limitations bars the state law claims against the Town, Council and Utility.  Fifth, Defendants are immune pursuant to the Indiana Tort Claims Act.  Sixth, Plaintiffs' failure to file an Indiana Tort Claims notice bars any claim arising in tort. Seventh, Plaintiffs failed to exhaust the administrative remedies available to them and of which they were notified.  Lastly, the claims against the Council are redundant of the claims against the Town.  For all of these reasons, Defendants are entitled to summary judgment on all of Plaintiffs' state law claims.

### A.  PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY JUDGMENT.

In Count I of their Complaint, Plaintiffs seek a declaratory judgment alleging the Town, Council and Utility failed and declined to extend sewer service to the Property.  Plaintiffs claim those actions affected their rights and denied them equal protection of the laws.[2]

Declaratory judgments are governed by Indiana's Uniform Declaratory Judgment Act ("USJA"), which in relevant part provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status, or other legal relations thereunder.  I.C. § 34-14-1-2.

---

[2] To the extent Count I states an Equal Protection Claim, it is the same as Count II.

The basis of Plaintiffs' claim is difficult to discern from Plaintiffs' complaint. Plaintiffs have not stated that they are affected by a statute, municipal ordinance,[3] contract or franchise. If the basis of Plaintiffs' claim is a tort, the claim must fail as Plaintiffs failed to file a Tort Claim Notice pursuant to I.C. § 34-13-3-8 as described more fully in Section IV, F below.

The allegations in Plaintiffs' Complaint provide that Defendants' actions have affected their rights and denied them equal protection of the law. The USJA was not intended to create additional rights; affirmative relief shall be allowed under such remedy when the right thereto is established. *See 4 Ind. Prac., Rules of Procedure Annotated R 57* (3d Ed.) An aggrieved party must have a legally protected interest, such as personal or property rights, to seek judicial review or declaratory relief. *11 Ind. Prac., Procedural Forms With Practice Commentary § 91.1 (3d Ed.).* To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it that is derived from statute, legal rule, or mutually explicit understanding. *Id., Harmony Health Plan of Indiana, Inc. v. Indiana Dept. of Admin.*, 864 N.E.2d 1083 (Ind.Ct. App. 2007).

Based upon the foregoing, Plaintiffs must establish that they have a legitimate claim of entitlement to sewer system. Plaintiffs must point to a statute, legal rule or mutually explicit understanding that the Defendants are required to pay for Plaintiffs' Property to be hooked onto the system. Plaintiffs failed to provide case law or a statute to support this proposition.

In *Town Council of New Harmony v. Parker*, plaintiff contended that the Town had an obligation to provide municipal utilities to her lots at no cost to her. 726 N.E.2d 1217, 1226 (Ind. 2000). The Court stated, "[T]his is not the case." *Id.* It has long been established that it is

_____

[3] Pursuant to *State v. Black*, 380 N.E.2d 1261, challenge to an ordinance is not proper ground for declaratory judgment action.

not the "duty of a municipality to make every sewer or drain which may be desired by individuals, or which a jury might even find to be necessary and proper." *Wilson v. The City of New York* , 1 Denio 595, 600 (N.Y. Super 1845). "[C]ertain services, such as fire and police protection have traditionally been provided to all citizens of a municipality, financed through property taxes." *Town Council of New Harmony*, 726 N.E.2d at 1226. "[C]ertain other services, such as water, sewer, gas, electric, and roads, were traditionally thought of as proprietary and are still largely provided through assessments to the landowners of the parcels benefiting from the installation of utilities." *Id.* The court acknowledged I.C. § 36-9-2-16 and § 36-9-23-29 in making this determination.

I.C. § 36-9-2-16 provides:

> "A unit may regulate the furnishing of the service of collecting, processing, and disposing of waste substances and domestic or sanitary sewage. This includes the power to fix the price to be charged for that service."

I.C. § 36-9-23-29 provides:

> "If, as part of the construction of sewage works under this chapter, a municipality constructs a sewer suitable for use as a local or lateral sewer by abutting or adjoining property, **it may charge a fee for connections to the sewer**. The fee must be based on the pro rate cost of constructing a local or lateral sewer sufficient to serve the property." I.C. § 36-9-23-29(a). "The board may approve or disapprove applications for connections and may fix the amount of the connection fee." I.C. § 36-9-23-29(b). "**A person who applies for a connection shall agree to pay the connection fee.** If payment is not made as agreed, the fee constitutes a lien on the property for which the connection is made. Such a lien may be enforced in the manner prescribed in section 34 of this chapter." I.C. § 36-9-23-29(c).

A city may, without violating equal protection principles, charge a lower fee for users of existing sewer services than it charges users of extended service, where the costs of the systems

are different.  *Id., Brandel v. Civil City of Lawrenceburg*, 249 Ind. 47, 230 N.E.2d 778 (1967), *Winney v. Board of Com'rs of Vigo County*, 174 Ind. App. 624, 369 N.E.2d 661 (1st Dist. 1977).

In this case, Plaintiffs may connect their property to the Town's sewer system; however, they must pay to do so. The Council waived the connection fee for Plaintiffs but intended to pass along the charges for Plaintiffs to hook onto the system as the estimate to extend service out to Plaintiffs' property was over $18,000.00.  The Council incurred $2,300.00 in charges to obtain the plans for the expansion of the system to Plaintiffs' Property.  As statute and case law establish, the Town and Council were well within their rights to pass along the charges to Plaintiffs as there is no requirement that a municipality provide sewer service to its residents nor to individuals outside of the municipality limits.  Statute provides that an entity can choose whether to provide service and has the power to fix the price.  The entity may also charge a fee for the connection to that service; however, the fee must be based on the cost of construction. As such, the Town, Council and Utility respectfully request this Court decline to enter a declaratory judgment in Plaintiffs' favor and instead enter summary judgment for the Town, Council and Wastewater Utility.

### B. PLAINTIFFS ARE NOT ENTITLED TO ANY ORDER FOR MANDATE.

Plaintiffs claim they are entitled to prevail on an action for mandate requiring appropriate action to extend and provide sewer services to the property.  "An action for mandate, an extraordinary remedy of an equitable nature, is generally viewed with disfavor."  *Perry v. Ballew, citing State ex rel. Steinke v. Coriden*, 831 N.E.2d 751, 757 (Ind.Ct.App.2005), t*rans. denied* "mandamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law." *Id.* (quotations and citations omitted).  As explained more fully above in Section IV-A, there is

neither statute nor caselaw requiring a municipality to provide sewer service to a resident nor an individual residing outside of the municipality limits.

There are six general requirements for the issuance of a writ of mandamus or prohibition: (1) a showing that the Indiana Supreme Court has jurisdiction over the matter; (2) the writ is sought expeditiously; (3) the respondent court has exceeded its jurisdiction or failed to act when it was under a duty to act; (4) the absence of jurisdiction or failure to act was raised in a written motion before the respondent court and the motion was denied or not timely ruled on; (5) the denial of a writ will result in extreme hardship; and (6) the remedy available by appeal will be wholly inadequate. *See* Ind. Original Action Rule 3(A); *see also Haddix v. State,* 827 N.E.2d 1160, 1166 (Ind.Ct.App.2005), *trans. denied.* Plaintiffs have failed to satisfy all six of the requirements for the issuance of a writ of mandamus.

Mandamus will issue to compel a municipality to permit a property owner to connect with a public sewer, where the owners have complied with all legal requirements to entitle him or her to this right and no valid reason is shown for a refusal to issue a permit. *Id., Springmyer v. State ex rel. Bowler*, 1 Ohio C.D. 279, 1886 WL 2559 (Ohio Cir. Ct. 1886), aff'd by 23 W.L.B. 281, *McCandless v. Campbell*, 20 Haw. 411, 1911 WL 1765 (1911). Plaintiffs are not alleging that any of the Defendants are refusing to connect them to the sewer system.

In this case, Plaintiffs did not comply with all of the legal requirements entitling them to hook onto the system. Plaintiffs have refused to incur the expense of hooking on to the system. Despite the waiver of the $1,040.00 connection fee by the Council, Plaintiffs still refuse to pay the cost of connecting their property to the sewer system. As there is no evidence in the record that Defendants have a duty to connect Plaintiffs to the sewer system, or that Plaintiffs have fulfilled their requirements to hook up to the sewer, Plaintiffs' action for mandate should fail.

## C. INJUNCTIVE RELIEF IS NOT A PROPER REMEDY AND/OR PLAINTIFFS ARE NOT ENTITLED TO SUCH RELIEF.

The Fourth Count of Plaintiffs' Complaint seeks Injunctive Relief as Plaintiffs state that "the resolution of Plaintiffs' claims may leave Plaintiffs without an adequate remedy at law, and the facts may have caused, and are causing Plaintiffs to incur irreparable harm." (Plaintiffs' Complaint, ¶28). Plaintiffs additionally state that they may request specific preliminary or final injunctive relief by motion. (Plaintiffs' Complaint, ¶29).

"Injunctions are extraordinary remedies that should be granted only with caution." *Groff v. City of Butler*, 794 N.E.2d 528, 535 (Ind.App. 2003), *Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 94 (Ind.Ct.App. 2001) (*citing Day v. Ryan*, 560 N.E.2d 77, 83 (Ind.Ct.App. 1990). A party suffering mere economic injury is not entitled to preliminary injunctive relief because damages are sufficient to make the party whole. *City of Gary, Indiana v. Majestic Star Casino, LLC*, 905 N.E.2d 1076 (Ind.App. 2009).

In this case, the only damages acknowledged by Plaintiffs are economic based on the lost rent from the inability to utilize the Property. Both Plaintiffs acknowledged that they would not have lost rent if they hooked onto the system. As Plaintiffs' injury is only economic, injunctive relief is inappropriate. As such, Defendants request that the Court enter summary judgment in their favor.

## D. PLAINTIFFS FAILED TO COMPLY WITH THE APPLICABLE STATUTE OF LIMITATIONS.

With regard to the state law claims, the six year statute of limitation applies as this is an action for use, rents or profits of real property. I.C. § 34-11-2-7. Notwithstanding the longer limitations period, all of Plaintiffs' claims against the Town, Council, and Utility are still barred as the sewer system was installed in 1998 and 1999 and Plaintiffs did not file this action until

November 2008. Therefore, Plaintiffs' claim for a declaratory judgment, mandate and injunction against the Town, Council and Utility should fail.

**E.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS AS THEY ARE ENTITLED TO IMMUNITY.**

Defendants are entitled to immunity for all of the state law claims. "A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from: …..(6) the performance of a discretionary function …" I.C. § 34-4-16.5-3(6), I.C. § 34-13-3-3(7), I.C. § 34-13-3-3(11). In deciding whether a governmental entity is immune from liability for a loss resulting from an action of the entity or its employees, the threshold question is whether the function of the governmental entity involved is ministerial or discretionary. *Rodman, State Department of Mental Health v. Allen*, 427 N.E.2d (1981), reh'g denied, 432 N.E.2d 435. A city's decision to install sewer system was the performance of a discretionary function immune from liability under State Tort Claims Act. *Rodman v. City of Wabash*, 479 N.E.2d 234 (Ind. App. 4 Dist., 1986), I.C. § 34-4-16.5-3(6).

Also, the events alleged in Plaintiffs' Complaint involved the acts or omissions of someone other than Defendants pursuant to I.C. § 34-13-3-3(10). As Plaintiffs refuse to incur the cost to hook the Property onto the Town of Fulton's sewer system, they cannot seek to impose liability on Defendants. Plaintiffs state law claims fail as Defendants are entitled to immunity, thus, entitling them to summary judgment.

**F.    PLAINTIFFS FAILED TO COMPLY WITH THE INDIANA TORT CLAIMS ACT.**

To the extent that any of Plaintiffs' claims are rooted in tort, any such claim must fail as Plaintiffs failed to file a Tort Claim Notice. The Indiana General Assembly enacted the Tort Claims Act in order to establish procedures for cases involving prosecution of tort claims against

governmental entities. *Garnelis v. Indiana State Dept. of Health*, 806 N.E.2d 365, 367-368 (Ind.App. 2004); *State v. Willits*, 773 N.E.2d 808, 814 (Ind. 2002). A claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision and the Indiana political subdivision risk management within 180 days after the loss occurs. *Id.,* I.C. § 34-13-3-8(a). Loss is defined as "injury to or death of a person or damage to property." *Id.,* I.C. § 34-6-2-75(a). Because the notice provisions of the Tort Claims Act are in derogation of the common law, they must be construed against limitations on a claimant's access to the court. *Polick v. Indiana Dep't of Highways*, 668 N.E.2d 682, 685 (Ind. 1996).

The Tort Claims Act's notice requirement bars Plaintiffs' state law claims as Plaintiffs failed to file Tort Claim notices in this case. Therefore, summary judgment should be granted in favor of the Town, Council, Utility and County on Plaintiffs' state law claims.

### G. PLAINTIFFS FAILED TO EXHAUST THE ADMINISTRATIVE REMEDIES AVAILABLE.

"It is well-established that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts." *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind. 2000), *see e.g. Austin Lakes Joint Venture v. Avon Util., Inc.*, 648 N.E.2d 641 (Ind. 1995). "Failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction." *Id., Greenbier Hills, Inc. v. Boes*, 473 N.E.2d 1040, 1042 (Ind.Ct.App. 1985).

### 1. Plaintiffs did not appeal the decision of the County.

Plaintiffs did not challenge the decision of the County to issue an Order vacating the property or the requirements to repair the property. Thus, Plaintiffs failed to exhaust their administrative remedies and their state law claims.

I.C. § 34-13-6 governs appeals from actions of municipalities. *Farley Neighborhood Ass'n v. Town of Speedway*, 765 N.E.2d 1226, 1230 (Ind. 2002). I.C. § 34-13-6-4(a) (West 2000) says in relevant part: "the decision appealed from is considered prima facie correct and the burden of proof in all appeals is on the party appealing." *Farley*, 765 N.E.2d 1226, 1230. Any appeal of an entity's administrative decision should be filed in the circuit court. *Abercrombie v. Office of Comptroller of Currency*, 641 F.Supp. 598, 602 (S.D.Ind.1986).

The County similarly informed Plaintiffs of their rights by issuing the Order (see Ex. 8). Fulton County's Ordinance 112006A (Ex. 9) provides, in part, that when a public sanitary sewage system becomes available and is within 300 feet of the property line and is served by an onsite sewage disposal system, a connection shall be made to the sanitary sewer. As the County Environmentalist, inspecting properties falls within the purview of Shannon Shepherd. The County was notified of problems with the septic system at the Property; the problems were verified by Shannon Shepherd and another County employee; and Dr. Bugno, the Fulton County Health Officer, notified Plaintiffs that the property must be hooked into the sewer system. Plaintiffs have not challenged any of these activities.

Plaintiffs admitted that they failed to exhaust available administrative remedies by declining to appeal the decision of the County. Thus, summary judgment should be entered in favor of the County.

> **2.** **Plaintiffs did not challenge the enactment of the applicable ordinances.**

Plaintiffs did not challenge the enactment of the applicable ordinances; therefore, their claims against the Town, Council and Wastewater Utility should fail.

First, pursuant to Indiana Code Section 36-9-23-26.1, owners of property connected to or to be served by the sewage works are to file a written petition objecting to rates and charges of

the sewage works. *See Farley Neighborhood Association v. Town of Speedway*, 765 N.E.2d 1226, 1228 (2002). Pursuant to I.C. § 36-9-23-26.1, the petition must contain the names and addresses of the petitioners, the petitioners must attend a public hearing, the written petition is to be filed with the municipal legislative body within five days after the ordinance establishing the rates and charges is adopted under Section 26 of this chapter, and the written petition must state specifically the ground or grounds of objection. Plaintiffs did not fulfill any of these requirements; therefore, summary judgment should be entered for the Town, Council and Utility.

Additionally, Plaintiffs are not alleging in their Complaint that the fees charged by the Town, Council and Utility are unreasonable. I.C. § 6-9-23-25(a) (West 2000) requires municipal legislative bodies to establish just and equitable fees for sewage works services. *Farley*, 765 N.E.2d 1226, 1230. I.C. § 36-9-23-25(b) (West 2000) defines "just and equitable fees" as those needed "to maintain the sewage works in the sound physical and financial condition necessary to render adequate and efficient service." Fees must be sufficient to cover all expenses incidental to operation and to provide a sinking fund, adequate working capital, and adequate funds for improvements and replacements. *Id.* Section 25(b) goes on to say, "Fees established after notice and hearing under this chapter are presumed to be just and equitable." *Id.*

At the time the relevant ordinances were enacted, there were no challenges to either ordinance. (Ex. 1, ¶16). Even if Plaintiffs had challenged the ordinances, they would have failed as the burden is on Plaintiffs to prove the Town's proposed rate structure was not reasonably related to either costs or the number of users. Plaintiffs have offered no evidence that Fulton's rates were unrelated to either costs or the number of users. See *Farley*, 765 N.E.2d 1226, 1231. As Plaintiffs failed to appeal the enactment of the ordinances, they did not exhaust the

administrative remedies available to them.  Therefore, summary judgment should be granted in favor of the Town, Council and Utility on all claims in Plaintiffs' Complaint.

### H. THE CLAIMS AGAINST THE COUNCIL ARE REDUNDANT OF THE CLAIMS AGAINST THE TOWN.

The claims against the Council are redundant of the claims against the Town.  As Plaintiffs are not suing the Council members in their individual capacity, the claims are against the Council members in their official capacity.  "Suits against municipal agents in their official capacities are actually suits against the municipality." *Hurst v. Town of Merrillville, Ind*., 2009 WL 1605131 at *2 (N.D. Ind. 2009), *Moore v. Bd. of Educ. of City of Chicago*, 300 F.Supp.2d 641, 646 (N.D. Ill. 2004).  "Thus, where the local government unit is also a defendant in the suit, the claim against the individual in her official capacity is redundant." *Id., Searles v. Bd. of Educ. of the City of Chicago/Chicago School Reform Bd. of Trs.*, No. 03 C 8966, 2004 WL 1474583 at *4 (N.D. Ill. June 29, 2004).  As there are no individual capacity claims against the Council members and only official capacity claims, summary judgment should be entered for the Council.

## CONCLUSION

This Court should grant Defendants' Motion for Summary Judgment because there is no genuine issue of material fact to preclude judgment in their favor.  Plaintiffs fail to meet their burden and show evidence to establish a *prima facie* case under the United States Constitution, Indiana Constitution, or under state law.  Further, Defendants are not otherwise liable. Therefore, Defendants are entitled to judgment as a matter of law.

Respectfully submitted by,

/s/ Kristen D. Alkire
KRISTEN D. ALKIRE, One of the Attorneys for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on July 1, 2010, a copy of the foregoing **MEMORANDUM OF DEFENDANTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was filed electronically with the Court. Notice of this filing will be sent to the following parties by operation of the Court's electronic system. Parties may access this filing through the Court's system.

- **Kristen D Alkire at** Kalkire@khkklaw.com

- **Matthew S Clark at** mclark@khkklaw.com, tmulligan@khkklaw.com

- **Charles R Shedlak at** crs@sandblawfirm.com

/s/ Kristen D. Alkire
KRISTEN D. ALKIRE, One of the Attorneys for Defendants

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for Defendants TOWN OF FULTON,
INDIANA, TOWN COUNCIL OF TOWN OF FULTON,
TOWN OF FULTON WASTEWATER UTILITY and
FULTON COUNTY HEALTH DEPARTMENT
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:      847-261-0700
Facsimile:       847-261-0714
E-Mail:            KAlkire@khkklaw.com

5909 MSJ, Memo 10-06-21

**EXHIBITS ATTACHED TO**

**MEMORANDUM OF DEFENDANTS IN SUPPORT OF**

**THEIR MOTION FOR SUMMARY JUDGMENT**

Exhibit 1       Affidavit of Connie Hartman

Exhibit 2       Ordinance No. 1998-5, Sewer Use Ordinance

Exhibit 3       Ordinance No. 1998-3, Sewer Rate Ordinance

Exhibit 4       Excerpts from Deposition of Richard D. Smith

Exhibit 5       Excerpts from Deposition of Janelle Smith

Exhibit 6       May 1, 2007 Anna Armstrong Complaint Form

Exhibit 7       Excerpts from Deposition of Shannon Shepherd

Exhibit 8       May 10, 2007 Health Order to Richard Smith

Exhibit 9       County Ordinance 112006A

Exhibit 10      Plaintiffs' Responses to Defendants' Requests for Admissions

Exhibit 11      Affidavit of Donald Clouse

5909 MSJ, Memo 10-06-21