# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| RICHARD SMITH and JANELLE SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 3:08-CV-536-JVB |
| | ) | |
| TOWN OF FULTON, INDIANA; TOWN | ) | |
| COUNCIL OF TOWN OF FULTON; TOWN | ) | |
| OF FULTON WASTEWATER UTILITY; and | ) | |
| FULTON COUNTY HEALTH DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiffs Richard and Janelle Smith own property located at 7877 South State Road 25 in Rochester, Indiana. Purchased in either 1977 or 1978, the property was connected to its own septic system. After living in the home for several years, the Plaintiffs eventually moved and began renting the property in 2000. In May 2007, the septic tank failed. Until then, the Smiths' septic system preformed satisfactory, needing only a few repairs over the years.

After discovering the septic tank's failure, Fulton County sent a letter ordering the Plaintiffs to either hook the house into the Town of Fulton's municipal sewer system or cease renting the property. According to an estimate Richard Smith ("Smith") obtained, the cost of hooking the property into the Town's sewer system will exceed $18,000. Unwilling to bear this expenditure alone, Plaintiffs chose to stop renting and file this lawsuit. Plaintiffs do not assert any state law tort claims. Instead, Plaintiffs bring a takings claim, as well as an equal protection claim. Defendants have moved for summary judgment. For the following reasons, the Defendants' motion for summary judgment will be granted.

**A. Facts**

The Smiths have owned the property located at 7877 South State Road 25 in Rochester, Indiana, since 1977 or 1978. (DE 29 at 3–4.) The property is two acres large and has always been outside the city limits of the Town of Fulton. (DE 29-2 at 4, 23.) Although the property line is 285 feet from town's sewer system, the house itself sits about 653 feet away. (*Id*. at 23.) Except for some minor work on the system's leach field, the septic system has remained unchanged since the late 1970's. (*Id*. at 5.) Only the toilet is hooked to the property's septic tank; the water used by the sink and other appliances drains into a rock pit beside the home. (*Id*. at 8.)

From October 1998 to November 1999, the Town of Fulton constructed its municipal sewer system. (DE 29-3 at 44.) To regulate the use of its new sewers, the town passed Ordinance No. 1998-5. (DE 29-1 at 6.) In part, this ordinance requires any individual who owns property *within town limits*—and at the owner's expense—to connect to the public sanitary sewer if the property line comes within two hundred feet of the sewer. (*Id*. at 7–8.) Although the Smiths were interested in connecting at this time, Don Clouse—the Town's Utility Supervisor—told Plaintiffs that only city residents were allowed to tap into the newly constructed system. (DE 29-3 at 44, 53.) The Smiths did not pursue the matter further. (*Id*.) Plaintiffs now assert Clouse's comments were erroneous, and Environmentalist Shannon Shepherd once mentioned that the Plaintiffs' property "should have been hooked up to [the municipal sewer system] when they first put it in." (DE 29-2 at 13.)

In 2007, the Smiths' tenant noticed problems with the home's septic system. (DE 29 at 4.) The tenant filled out a complaint with the Fulton County Health Department, and an ensuing investigation by Environmentalist Shepherd revealed a leaking septic tank and several other health code violations. (*Id*. at 5; DE 29-3 at 24 (stating that the Smiths' septic tank created a

2

"health hazard" under Ind. Code § 16-20-1-25).)[1] Pursuant to County Ordinance 112006A and Indiana state law, Shepherd issued the Smiths an order on May 10, 2007, instructing them to either: (a) connect to the public sewer system or (b) vacate the premises and suspend the use of the failing septic tank. (DE 29 at 5; *see also* DE 29-3 at 23–26.) Citing Indiana Code § 13-26-5-2(8), the health order stated that the Plaintiffs are obligated to connect to the municipality's system for their sewage needs because their property line is within three hundred feet of the Town's sewers. (DE 29-3 at 25.) Health department officials later told Smith that he could not repair or replace his faulty septic tank in lieu of connecting to the Town's sewer line. (DE 29 at 6.)

Smith was aware that he could request a hearing to dispute the health order. (DE 29-2 at 12.) Ultimately, he took no such action. (*Id*.) Smith did meet with the Town's governing board to discuss connecting to the city's sewers—twice. (*Id*. at 16.) As a result of these meetings, the Town spent $2,300 to develop sewer connection schematics for the Smiths. (DE 29-3 at 54.) The Town's board also agreed to waive a general $1,040 hookup fee. (DE 29-2 at 17; *see also* DE 29 at 3.)

The Plaintiffs have indicated that they "are not seeking to allege any state law tort claim," nor are they challenging the Town's enactment of the sewer ordinance or the rates that the town has set for sewer service. (DE 36 at 6.) Rather, Plaintiffs contend that the Defendants' requirement that the Smiths pay the construction costs of hooking into the municipal sewers constitutes an unjust governmental taking of their property and a violation of their equal protection rights. (Compl. ¶¶ 15, 18, 19, 22–23, 29.) Notably, Smith agrees that if the property

---

[1] See DE 29-3 at 2 for a copy of the complaint the Smiths' tenant filed with the Fulton County Health Department on May 1, 2007.

was hooked into the sewer system, the Plaintiffs could fully use their land again. (DE 29-2 at 19.) Plaintiffs' lost rent and attorney fees add up to $18,200. (*Id*. at 21.)

**B. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the

evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**C. Discussion**

**(1)** *Takings*

Plaintiffs argue that the Defendants' conduct has: (1) left the Plaintiffs without any viable use of their property, (2) infringed on the Plaintiffs' property rights and caused them to suffer damages, and (3) violated the Plaintiffs' rights to equal protection under the law as applicable through the Fourteenth Amendment.

The Fifth Amendment to the U.S. Constitution prohibits the taking of private property "for public use, without just compensation." U.S. CONST. amend V. The Fifth Amendment is applicable to the states. *See Chi., B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 238–41 (1897). Although many takings cases involve physical acquisition or invasion of property by the government, the Supreme Court has declared that a taking might occur when the government enacts a regulation that "goes too far." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). Notably, "most government regulation of property does not offend the Takings Clause." *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1221 (Ind. 2000) (citations omitted).

> The Supreme Court has held that the government may, consistent with the Takings Clause, affect property values by regulation without incurring an obligation to pay under the full scope of the State's police power. This may be done when the regulation proscribes "harmful or noxious" uses of property, although the proscribed use need not rise to this level.

*Id*. (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1022 (1992)). "[I]n instances in which a state tribunal reasonably conclude[s] that 'the health, safety, morals, or general welfare' would

be promoted by prohibiting particular . . . uses of land, this Court has upheld land-use regulations that destroyed or adversely affected recognized real property interests." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 125 (1978). Deciding whether a taking occurred is a factual inquiry that focuses on several factors: the economic impact of the regulation, the regulation's interference with reasonable investment-backed expectations, and the character of the government action. *Parker*, 726 N.E.2d at 1226 (citations omitted).

**(2)** *Plaintiffs' Failure to Timely Appeal the Health Order Terminates Their Takings Claim*

Indiana Code § 16-41-20-9 requires a person aggrieved by the order of a local board of health, or county health officer, to file for review within ten days. *See* IND. CODE § 16-41-20-9(a) (West, Westlaw through end of 2010 Second Regular Session). When no appeal is taken within the ten day period, the order of the local board of health becomes final and conclusive. *See* IND. CODE § 16-41-20-11(c) (West, Westlaw through end of 2010 Second Regular Session). Indiana's Administrative Orders and Procedures Act ("the Act") requires a person to exhaust all available administrative remedies before seeking judicial review.[2] *See* IND. CODE § 4-21.5-5-4(a) (West, Westlaw through end of 2010 Second Regular Session). An individual waives her right to judicial review if she fails to seek timely review. *Id.* § 4(b). Thus, Defendants contend: (1) Plaintiffs' failure to file an appeal with the county health board bars their claim because they did not exhaust administrative remedies, and (2) alternatively, even if the Plaintiffs did not need to exhaust administrative remedies, the claim is still untenable because Plaintiffs did not file an appeal within ten days. (DE 39 at 10.)

---

[2]  County Ordinance 112006A grants Fulton County's health officials the power to require property owners within three hundred feet of a public sanitary sewer to connect to it and specifies that the procedures established "in I.C. 4-21.5, the Administrative Procedure and Orders Act, shall apply to the conduct of the [Health Board] hearing." (DE 29-3 at 36.)

6

Plaintiffs do not argue that appealing the health order would have been futile. Plaintiffs instead assert that their claim is viable because they "had no available administrative review to exhaust" and Indiana Code § 16-41-20-9 is controlling. (DE 36 at 5.) Assuming, *arguendo*, that the Plaintiffs were not required to exhaust their administrative remedies by requesting a hearing in front of the municipal health board, the statute Plaintiffs cite still obligated them to file an appeal in court within ten days. (DE 29-3 at 25–26); *see* IND. CODE § 16-41-20-11(c). Plaintiffs did not comply with this requirement. (DE 29-2 at 12.) Thus, the Court lacks the power to review Fulton County's health order, making it final. IND. CODE § 16-41-20-9(a). Summary judgment for the Defendants on Plaintiffs' takings claim is appropriate on this ground alone.

**(3)** *Defendants' Conduct is not a Taking*

However, even if the Court had jurisdiction over the takings claim, Plaintiff would lose on the merits. Plaintiffs' takings claim can be separated into two components: (1) restricting Plaintiffs' use of the property until it is connected to the Town's sewers amounts to a taking, and (2) Defendants' refusal to pay the entire construction costs amounts to a taking. (*See* DE 36 at 5.) An analysis of the economic impact of the health order establishes no taking occurred. First, it is the Plaintiffs' burden to demonstrate that, because of the Defendants, there is no economically viable use for their property. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 499 (1987). When questioned if he had ever looked into other viable uses for his property, Smith responded, "No." (DE 29-2 at 20.) Similarly, the Plaintiffs' brief in opposition of summary judgment indicates, "Although the Smiths have not found another use for the property, no demonstrated or alleged other economically viable use of the property appears in the record." (DE 36 at 6.) The Plaintiffs' failure to produce any evidence demonstrating that their land has no viable economic use means the Defendants are entitled to summary judgment.

7

The extent of the health order's impact on distinct investment-backed expectations also suggests that no taking has occurred. *See Penn Cent. Transp. Co.*, 438 U.S. at 124. Notably, Plaintiffs concede their rental expectations will return once they connect to the sewer system. (DE 29-2 at 19.) The "character of the governmental action" at issue also suggests that the Plaintiffs did not suffer a governmental taking. *See Penn Cent. Transp. Co.*, 438 U.S. at 124. It is axiomatic that a broken septic tank—or its continued use—can cause environmental damage or illness. As the Supreme Court recognized in *Lucas v. South Carolina Coastal Council*, "'harmful or noxious uses' of property may be proscribed by government regulation without the requirement of compensation," and "[a] property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers." 505 U.S. at 1022, 1027. Here, the character of Defendants' conduct resembles the reasonable protection of the public's health and welfare, not the uncompensated taking of property.

Plaintiffs also allege that the Defendants' refusal to pay the entire cost of connecting their property to the municipal sewers constitutes a taking. The Indiana Supreme Court rejected an analogous argument in *Town Council of New Harmony v. Parker*. *See* 726 N.E.2d at 1224. *Parker* involved a plaintiff who owned several undeveloped real estate lots. *Id.* at 1220. The plaintiff requested that the town provide utilities such as water, sewer, and gas to the lots at the municipality's sole expense. *Id.* at 1221. When the town refused, the plaintiff filed a complaint alleging a taking without just compensation occurred. *Id.* at 1223. The court first determined that the government's conduct took "nothing away from Parker." *Id.* at 1226. The court then opined:

> Certain services, such as fire and police protection, have traditionally been provided to all citizens of a municipality, financed through property taxes. Certain other services, such as water, sewer, gas, electric, and roads, were traditionally thought of as proprietary and are still largely provided through assessments to

8

the landowners of the parcels benefiting from the installation of
utilities.

*Id*. Additionally, the court sanctioned the municipality's ability to charge individuals for connecting to its infrastructure, stating:

> [T]he Town responded appropriately to Parker's request for installation of utilities, by offering to provide Parker with various pieces of beneficial infrastructure under the condition that she assume responsibility for some of the cost of the improvements pursuant to the Barrett Law, Ind. Code § 36-9-36-1. This plan proposed to bring appropriate utilities to Parker's property without requiring users to pay the bill. . . . The town did not "take" Parker's land when it asked her to pay a share of the cost of extending additional utilities.

*Id*. at 1226–27. Thus, like the Indiana Supreme Court, this Court concludes that the Defendants' refusal to pay is not a taking. *See id*.[3] The Town of Fulton, just like the Town of New Harmony, has responded appropriately to Plaintiffs' need to hook into the municipal sewers. In addition to waiving the $1,040 tap-in-fee, the town spent $2,300 to develop the schematics Plaintiffs will need to connect to the sewer and secured Plaintiffs a construction permit. (DE 29-1 at 3.) Accordingly, if the Plaintiffs do decide to connect their property to the municipal sewer system, they cannot expect the Defendants to bear the entire cost themselves.

**D. Equal Protection Claim**

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota Cnty., Neb.*, 260 U.S. 441, 445 (1923)). A successful equal protection claim brought

---

[3] As discussed earlier, the Plaintiffs have presented no evidence regarding the diminution of their property value or alternative uses for it. Accordingly, Plaintiffs have failed to meet their burden of establishing that the Defendants' refusal to pay all construction costs has left them with no economically viable use for their property.

under a "class of one" theory—absent the involvement of a fundamental right or protected class membership—alleges that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. (citations omitted). Moreover, "to demonstrate a viable equal protection claim in the land-use context, the plaintiff must demonstrate 'governmental action wholly impossible to relate to legitimate governmental objectives.'" *Forseth v. Vill. of Sussex*, 199 F.3d 363, 370–71 (7th Cir. 2000) (citations omitted). The plaintiff can satisfy this standard by showing: (1) that the government's action was based on the malicious conduct of a governmental agent—for example, conduct that evidences a spiteful effort to "get" the plaintiff for reasons wholly unrelated to any legitimate state objective; or (2) circumstances—such as prayer for equitable relief and a claim that would evaporate if the governmental body treated everyone equally—that sufficiently suggest the plaintiff has not merely disguised a takings claim as an equal protection claim. *Id*. at 371 (citing *Hager v. City of West Peoria*, 84 F.3d 865, 870 (7th Cir. 1996)).

The plaintiff has the burden to demonstrate that she was treated differently from someone "who is *prima facie* identical in all relevant aspects." *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (citation omitted). Generally, whether individuals are similarly situated is a factual question for the jury. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)). "However, a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Id*. (citation omitted).

**(1)** *Plaintiffs' Equal Protection Claim is Untimely*

Plaintiffs' equal protection claim was brought under 42 U.S.C. § 1983; as such, the claim is subject to Indiana's personal injury statute of limitations. (Compl. ¶¶ 22–23); *see Brademas v.*

10

*Ind. Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004). The limitations period is two years. *Id.*; *see* IND. CODE § 34-11-2-4 (West, Westlaw through end of 2010 Second Regular Session) (noting a two year personal injury statute of limitations). Federal law governs when a § 1983 action accrues. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). "A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994). A plaintiff does not need to experience the "entirety of consequences resulting from an injury" before the statute of limitations on their claim begins to run; rather, a plaintiff only needs to have "knowledge of an allegedly unlawful action." *See Brademas*, 354 F.3d at 686. Plaintiffs had knowledge of Clouse's action right after Smith discussed hooking into the new sewer system with him in 1998 or 1999. (DE 29-3 at 44, 53.) Thus, any § 1983 claim Plaintiffs had dating back to 1998 or 1999 is time barred by the statute of limitations.

 **(2)** ***Plaintiffs were not Denied the Equal Protection of the Law***

Plaintiffs attempt to meet the "similarly situated" requirement by asserting "that they were treated, and continue to be treated, differently from other citizens whose properties were within 300 feet of the Town's system and who were connected to the system on the terms and costs then in effect" and that they "are receiving treatment different from the treatment accorded to residents and to property owners within the Town of Fulton." (DE 36 at 3, 4.) However, they offer no evidence to support their allegations. Nowhere does the record disclose that a non-resident hooked into the Town's sewer system at any point during this litigation, that government officials treated a non-resident differently than the Plaintiffs, that any of the Defendants paid the costs of connecting someone else's property to the sewer system, or that the Town allowed a non-resident to use the system under terms different than those that applied to the Plaintiffs.

11

Further, Plaintiffs have failed to demonstrate that some individual or entity—whether a Defendant or otherwise—operated with an intentional or malicious bias against them. Nothing in the record suggests Clouse, the Town's Utility Supervisor, acted deliberately or tried to "get" the Plaintiffs in 1998 or 1999 when he stated only Fulton Town residents were eligible to connect to the sewer.[4] Additionally, Environmentalist Shepherd's statement the Plaintiffs "should have been hooked up to [the municipal sewer system] when they first put it in" is wrong (DE 29-2 at 13.)

Fulton County Ordinance No. 101992 was in effect during the sewer's construction in 1998 and 1999. (DE 39-2 at 2, 4.) Setting forth the county's minimum acceptable sewage standards, the ordinance only required a building to get connected to a public sanitary sewage system if its property line sat within one hundred feet of a connection site. (*Id*. at 4.) Later, in December 2006, Fulton County promulgated Ordinance No.112006A. (DE 29-3 at 38, 40–41.) In addition to repealing Ordinance No. 101992, the new law changed the distance provision; subsequent to its enactment, any building within Fulton County sitting on property within three hundred feet of a sanitary sewage line was obligated to connect to it. (*Id*. at 33.)

Five months later, in May 2007, Environmentalist Shepherd discovered a failed septic tank on property not connected to a municipal sewer, but within three hundred feet of an available tap in. (*Id*. at 12.) Using the authority found in Ordinance No. 112006A, Indiana Code § 16-20-1-19, and Indiana Code § 13-26-5-2(8), she ordered the Plaintiffs to connect their property to the Town of Fulton's sewers, or cease its use. (*Id*. at 23, 29); *see* IND. CODE § 16-20-1-19 (West, Westlaw through end of 2010 Second Regular Session) ("Local health officers shall enforce the health

---

[4] The Town of Fulton established its original sewage connection regulations in Ordinance No. 1998-5. (DE 29-1 at 6.) Section two, subpart (g) only required property owners holding land "situated within the town" to connect to the sewer system if their property line was located "within two hundred (200) feet" of the public sewer. (*Id*. at 12.) This same provision also required property owners to connect at their own expense. (*Id*.) The Plaintiffs' property is neither: (1) located within the Town of Fulton, nor (2) within two hundred feet of a sewer line. (*See* DE 29-3 at 43 (noting that the Plaintiffs' property line is 285 feet from the nearest tap).) Thus, nothing in the 1998 town ordinance granted Clouse the authority to order the Plaintiffs to hook into the municipal sewers. (*Id*. at 53.) Regardless of this town ordinance, a Fulton County Health Department official—using Fulton County Ordinance No.112006A — ordered the Plaintiffs to connect to the Town of Fulton's sewer system, not the Town of Fulton. (*Id*. at 23.)

laws, ordinances, orders, rules, and regulations of the officer's own and superior boards of health."); *see also* IND. CODE § 13-26-5-2(8) (West, Westlaw through end of 2010 Second Regular Session) (noting that "[a] district may" order waste producing property within three hundred feet of a sanitary sewer to connect to it). Plaintiffs have not shown that the Town of Fulton, its town council, the Town's Wastewater Utility, the Fulton County Health Department, or any state official acted irrationally or maliciously in 1998 and 1999 or from May 2007 onward.

**E. Conclusion**

Plaintiffs indicate that they are not pursuing state law claims. (DE 36 at 6.) Plaintiffs failed to file their takings claim timely, did not show that the Defendants' conduct is in the character of a taking, and could not identify a similarly situated individual for equal protection purposes. Thus, the Defendants' motion for summary judgment is GRANTED. (DE 28.)

SO ORDERED on March 14, 2011.

S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE